[No. S062156. Jan. 21, 1999.]

DAN BRIGGS et al., Plaintiffs and Appellants, v.
EDEN COUNCIL FOR HOPE AND OPPORTUNITY, Defendant and
Respondent.

**COUNSEL**

Knox, Anderson & Blake, Anderson & Blake and Kevin Anderson for Plaintiffs and Appellants.

Brancart & Brancart, Christopher Brancart, Elizabeth Brancart; Mark Goldowitz; John C. Barker; and Elizabeth Bader for Defendant and Respondent.

Levy, Ram & Olson and Karl Olson for California Newspaper Publishers Association et al., as Amici Curiae on behalf of Defendant and Respondent.

James D. Smith for Fair Housing Organizations as Amici Curiae on behalf of Defendant and Respondent.

Catherine I. Hanson and Astrid G. Meghrigian for California Medical Association as Amicus Curiae on behalf of Defendant and Respondent.

Julia Mandeville Damasco for City of Hayward, City of Pleasanton, City of Santa Clara and City and County of San Francisco as Amici Curiae on behalf of Defendant and Respondent.

Hagenbaugh & Murphy, Daniel A. Leipold and Cathy L. Shipe for Cult Awareness Network, Inc., and F.A.C.T.Net, Inc., as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**WERDEGAR, J.**—Must a defendant, moving specially under Code of Civil Procedure section 425.16 (hereafter section 425.16 or the anti-SLAPP[1] statute) to strike a cause of action arising from a statement made before, or in connection with an issue under consideration by, a legally authorized official proceeding, demonstrate separately that the statement concerned an issue of public significance? In accordance with the plain language of the statute and in consonance with discernible legislative intent, as well as for reasons of sound public policy, we conclude not. Accordingly, we reverse the judgment of the Court of Appeal.

### Background[2]

Plaintiffs Dan and Judy Briggs own residential rental properties. Defendant Eden Council for Hope and Opportunity (ECHO), a nonprofit corporation partly funded by city and county grants, counsels tenants and mediates landlord-tenant disputes. Seeking damages for defamation and intentional and negligent infliction of emotional distress, plaintiffs allege ECHO harassed and defamed them.

Plaintiffs allege: In 1990, ECHO counseled Pamela Ford, an African-American woman who rented an apartment from plaintiffs. After Ford

[1]Strategic lawsuit against public participation. We previously have adopted this acronym for lawsuits affecting speech or petition rights. (See *Rosenthal* v. *Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 412 [58 Cal.Rptr.2d 875, 926 P.2d 1061]; *College Hospital, Inc.* v. *Superior Court* (1994) 8 Cal.4th 704, 713-718 [34 Cal.Rptr.2d 898, 882 P.2d 894].) The acronym was coined by Penelope Canan and George W. Pring, professors at the University of Denver. (See generally, Canan & Pring, *Strategic Lawsuits Against Public Participation* (1988) 35 Soc. Probs. 506; Comment, *Strategic Lawsuits Against Public Participation: An Analysis of the Solutions* (1990-1991) 27 Cal. Western L.Rev. 399.)

[2]The factual recitation parallels that of the Court of Appeal. No party petitioned for rehearing to suggest the Court of Appeal omitted or misstated any material fact. (Cal. Rules of Court, rule 29(b)(2).)

complained to ECHO that plaintiffs were giving her a less favorable electricity offset than that given to a Caucasian tenant, ECHO assisted Ford in filing a complaint with the federal Department of Housing and Urban Development (HUD) and in prosecuting a small claims court action against plaintiffs. HUD exonerated plaintiffs, but Ford prevailed in small claims court. In an unrelated civil action, plaintiffs sought ECHO's files, ultimately obtaining a court order compelling their production and sanctioning ECHO. Plaintiffs allege that during HUD's investigation of Ford's complaint, ECHO employees referred to Dan Briggs as a "racist," and that other defamatory statements, including that Briggs "is a redneck and doesn't like women," were made to a HUD investigator and other persons.

In 1991, Dan Briggs telephoned ECHO asking for the names and addresses of ECHO's directors so he could complain to them about ECHO's failure to produce the earlier requested documents. Briggs asked to speak with Caroline Peattie, ECHO's assistant executive director. ECHO's receptionist gave Peattie a telephone message slip, and Peattie returned Briggs's call. The subsequently disclosed files revealed that, while talking with Briggs, Peattie wrote and circled on the telephone message slip the letters "KKK." Other ECHO staff members saw the message slip and the "KKK" notation.

The minutes of the ECHO board meetings reveal that at one meeting ECHO's directors discussed whether Dan Briggs was mentally unbalanced. The executive director's notes recorded the view that Briggs was on a "witchhunt." At another meeting, ECHO's executive director stated that Briggs had made racist comments to the city's staff while complaining about city funding of ECHO.

Another of plaintiffs' tenants, Diana Bond, punctured the refrigerator in her apartment while trying to defrost it. The refrigerator was repaired, but malfunctioned a year later. When plaintiffs refused to repair or replace the refrigerator, Bond consulted ECHO. Bond ultimately vacated the apartment, taking the refrigerator with her. Plaintiffs deducted the costs related to the refrigerator from Bond's security deposit, whereupon Bond successfully sued plaintiffs in small claims court. Plaintiffs allege ECHO maliciously gave Bond false advice in connection with this matter.

When plaintiffs' tenants Kirk and Gay-Rita Poates consulted ECHO, a staff member commented, "We know what kind of people you're dealing with." In another incident, involving a dispute between two roommates who also were tenants of plaintiffs, an ECHO staff member told one of the roommates that "this [has] happened [before] with Dan and Judy." The tenant understood the remark to be negative.

After plaintiffs filed this action, ECHO filed a special motion to strike the complaint pursuant to the anti-SLAPP statute. In support, ECHO argued that plaintiffs' claims were based upon statements made in connection with issues pending before or under consideration by executive and judicial bodies (§ 425.16, subd. (e)(1) and (2)), and that plaintiffs had not established a probability they would prevail on their claims (§ 425.16, subd. (b)(1)). In opposition, plaintiffs argued that ECHO's alleged activities did not involve matters of "public significance" (§ 425.16, subd. (a)). The trial court granted ECHO's motion, dismissed the complaint, and awarded ECHO attorney fees and costs.

Plaintiffs filed two appeals, one challenging the judgment of dismissal, the other the attorney fees award. The Court of Appeal consolidated the appeals and reversed both the judgment of dismissal and the order awarding attorney fees and costs. The Court of Appeal held that the trial court had erred in striking the complaint under section 425.16, because ECHO had not made a prima facie showing that this lawsuit arose from an act by ECHO in furtherance of its constitutional petition or speech rights in connection with a public issue. Thus, the Court of Appeal impliedly held that a cause of action is not subject to being struck under the anti-SLAPP statute unless it arises from a statement or writing by the defendant which, substantively, addresses an issue of public significance, even if the statement or writing is made before or in connection with an issue under consideration by an official body or proceeding.[3]

We granted ECHO's petition for review.

*Discussion*

Section 425.16[4] provides, inter alia, that "A cause of action against a person arising from any act of that person in furtherance of the person's right

---

[3]All three Court of Appeal justices concluded (erroneously, as will appear) that a defendant qualifies for anti-SLAPP protection only if the challenged suit arises from a petition or speech in connection with a "public issue." Only the two justices constituting the Court of Appeal majority for reversal, however, concluded that ECHO's statements did *not* have public significance within the meaning of the statute.

[4]In its entirety, section 425.16 reads:

"(a) The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly.

"(b)(1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California

of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement

---

Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

"(2) In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

"(3) If the court determines that the plaintiff has established a probability that he or she will prevail on the claim, neither that determination nor the fact of that determination shall be admissible in evidence at any later stage of the case, and no burden of proof or degree of proof otherwise applicable shall be affected by that determination.

"(c) In any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs. If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to [Code of Civil Procedure] Section 128.5.

"(d) This section shall not apply to any enforcement action brought in the name of the people of the State of California by the Attorney General, district attorney, or city attorney, acting as a public prosecutor.

"(e) As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

"(f) The special motion may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper. The motion shall be noticed for hearing not more than 30 days after service unless the docket conditions of the court require a later hearing.

"(g) All discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this section. The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion. The court, on noticed motion and for good cause shown, may order that specified discovery be conducted notwithstanding this subdivision.

"(h) For purposes of this section, 'complaint' includes 'cross-complaint' and 'petition,' 'plaintiff' includes 'cross-complainant' and 'petitioner,' and 'defendant' includes 'cross-defendant' and 'respondent.'

"(i) On or before January 1, 1998, the Judicial Council shall report to the Legislature on the frequency and outcome of special motions made pursuant to this section, and on any other matters pertinent to the purposes of this section."

or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . ." (*Id.*, subd. (e).)

Courts of Appeal applying section 425.16 have divided on the question whether a defendant who moves under the statute to strike a cause of action arising from a statement made before, or in connection with an issue under consideration by, an "official proceeding" must separately demonstrate that the statement was made in connection with a "public" issue. (Compare *Zhao* v. *Wong* (1996) 48 Cal.App.4th 1114 [55 Cal.Rptr.2d 909] [section 425.16 applies only to causes of action arising from statements or writings on issues of public significance] with *Braun* v. *Chronicle Publishing Co.* (1997) 52 Cal.App.4th 1036 [61 Cal.Rptr.2d 58] (*Braun* v. *Chronicle*) [section 425.16 applies to any cause of action arising from a statement or writing connected to an issue under consideration by an official proceeding].) The Court of Appeal in this matter followed *Zhao* v. *Wong,* holding that "a lawsuit qualifies as a SLAPP suit only if it challenges a statement made in connection with a *public* issue made in an official proceeding or a statement made in connection with a *public* issue under review in an official proceeding."

For the following reasons, we conclude the Court of Appeal erred.

1. *Statute's Plain Language*

First, the plain, unambiguous language of section 425.16 encompasses plaintiffs' causes of action against ECHO, without any separate "public issue" requirement. Section 425.16, subdivision (b)(1) expressly makes subject to a special motion to strike "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue . . . ." As noted, for the statute's purposes, an " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) *any* written or oral statement or writing made before a legislative, executive or judicial proceeding, or any other official proceeding authorized by law; [and] (2) *any* written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . ." (§ 425.16, subd. (e), italics added.) Thus, plainly read, section 425.16 encompasses any cause of action against a person arising from any statement or writing made in, or in connection with an issue under consideration or review by, an official proceeding or body.

Construing clause (2) of section 425.16, subdivision (e), quoted above, the court in *Zhao* v. *Wong* nevertheless opined that, even though the clause "contains no reference to 'public issue' or an equivalent phrase," it does not "eliminate[] the requirement, expressed in the language subject to definition, that the oral statement or writing must be 'in connection with a public issue.' The operative language in subdivision (b) . . . continues to require that the issue in question, i.e. 'an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law,' be a public issue." (*Zhao* v. *Wong, supra*, 48 Cal.App.4th at p. 1127, fn. omitted; accord, *Linsco/Private Ledger, Inc.* v. *Investors Arbitration Services, Inc.* (1996) 50 Cal.App.4th 1633, 1639 [58 Cal.Rptr.2d 613]; *Ericsson GE Mobile Communications, Inc.* v. *C.S.I. Telecommunications Engineers* (1996) 49 Cal.App.4th 1591, 1601 [57 Cal.Rptr.2d 491].)

Neither *Zhao* v. *Wong* nor its progeny provides authority, legal or grammatical, for such a strained construction. As explained, the statute plainly reads otherwise. Moreover, for us to adopt the *Zhao* court's novel understanding would contravene a "longstanding rule of statutory construction—the 'last antecedent rule'—[which] provides that 'qualifying words and phrases and clauses are to be applied to the words or phrases immediately preceding and are not to be construed as extending to or including others more remote.' " (*White* v. *County of Sacramento* (1982) 31 Cal.3d 676, 680 [183 Cal.Rptr. 520, 646 P.2d 191], quoting *Board of Port Commrs.* v. *Williams* (1937) 9 Cal.2d 381, 389 [70 P.2d 918].) And as will appear, the Legislature expressly has rejected *Zhao* v. *Wong*'s analysis and narrowing approach. (See generally, § 425.16, subd. (a); Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1296 (1997-1998 Reg. Sess.) for July 2, 1997, hg., pp. 3-4.)

The record establishes that plaintiffs' three causes of action against ECHO all "arise from"—i.e., are based upon—statements or writings that ECHO personnel made in official proceedings or in connection with issues under consideration or review by executive or judicial bodies or proceedings.

Specifically, plaintiffs in their complaint base their defamation cause of action on ECHO's alleged assisting of tenant Ford "to institute legal action with . . . HUD . . . against the plaintiffs," and ECHO's alleged "defamatory statements . . . made to a HUD investigator and other unknown persons" in connection with Ford's HUD action, "includ[ing] the term 'KKK' being handwritten and circled next to plaintiff Dan Briggs' name on a

telephone message note."[5] They base their intentional and negligent infliction of emotional distress causes of action on, first, ECHO's alleged provision to tenant Bond of "information with regard to the habitability of [Bond]'s apartment because of a broken refrigerator" about which the Court of Appeal noted Bond had successfully sued plaintiffs in small claims court; second, ECHO's alleged provision of false information and direction to two different tenants involved in a dispute over a security deposit; and, third, ECHO's alleged "failure to comply with a deposition subpoena for production of documents served in an unrelated civil action."

Thus, plaintiffs' causes of action against ECHO all arise from ECHO's statements or writings made in connection with issues under consideration or review by official bodies or proceedings—specifically, HUD or the civil courts. Plaintiffs concede that "petitioning activity involves lobbying the government, suing, [and] testifying." As pertinent here, " '[t]he constitutional right to petition . . . includes the basic act of filing litigation or otherwise seeking administrative action.' " (*Dove Audio, Inc.* v. *Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 784 [54 Cal.Rptr.2d 830], quoting *Ludwig* v. *Superior Court* (1995) 37 Cal.App.4th 8, 19 [43 Cal.Rptr.2d 350].) Even ECHO's counseling of tenant Bond, apparently, was in anticipation of litigation, and courts considering the question have concluded that "[j]ust as communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege of Civil Code section 47, subdivision (b) [citation], . . . such statements are equally entitled to the benefits of section 425.16." (*Dove Audio, Inc., supra*, at p. 784, citing *Rubin* v. *Green* (1993) 4 Cal.4th 1187, 1194-1195 [17 Cal.Rptr.2d 828, 847 P.2d 1044] and *Ludwig* v. *Superior Court, supra*, 37 Cal.App.4th at p. 19; see also *Mission Oaks Ranch, Ltd.* v. *County of Santa Barbara* (1998) 65 Cal.App.4th 713, 728 [77 Cal.Rptr.2d 1].)

Thus, to the extent that, as the trial court impliedly found, plaintiffs failed to establish a probability of prevailing on their claim (§ 425.16, subd. (b)(1)),[6] it follows that their causes of action are, in accordance with section 425.16's plain language, "subject to [ECHO's] special motion to strike" (*ibid.*).

---

[5]Plaintiffs in their complaint also allude vaguely to unspecified (except for "We know what kind of people you're dealing with") and assertedly "defamatory statements concerning plaintiffs' character and qualifications in their business of renting residential apartments," made "in or about June, 1994, [to] another tenant of plaintiffs" and within the hearing of that tenant "and several other persons" on "other occasions."

[6]In issuing its order, the trial court expressly stated, "There is such minuscule . . . basis for argument on behalf of plaintiff, I'm going to confirm the tentative ruling and strike the action." Thus, the trial court impliedly found plaintiffs had not established a probability that they would prevail on their claim. (See *Murray* v. *Superior Court* (1955) 44 Cal.2d 611, 619

Plaintiffs, however, citing *Zhao* v. *Wong*, argue that section 425.16 does not apply to events that transpire between private individuals. The Court of Appeal in *Zhao* opined that "the Legislature contemplated that the statute would apply only to a limited sphere of activities covered by certain protections of the First Amendment, i.e., activities described by the statement of legislative purpose" (*Zhao* v. *Wong*, *supra*, 48 Cal.App.4th at p. 1129), which speaks of encouraging "participation in matters of public significance" (§ 425.16, subd. (a)). According to plaintiffs, section 425.16 protects only statements or writings that defend the speaker's or writer's own free speech or petition rights or that are otherwise "vital to allow citizens to make informed decisions within a government office." Plaintiffs insist tenant counseling activities like ECHO's are not protected by section 425.16 because they neither promoted ECHO's own constitutional right of free speech nor informed the public about possible wrongdoing.

Even assuming, for purposes of argument, that plaintiffs accurately have characterized ECHO's activities as constituting neither self-interested nor general political speech, we cannot conclude such activities thereby necessarily fall outside the protection of the anti-SLAPP statute. Contrary to plaintiffs' implied suggestion, the statute does not require that a defendant moving to strike under section 425.16 demonstrate that its protected statements or writings were made *on its own behalf* (rather than, for example, on behalf of its clients or the general public). We agree, moreover, with the court in *Braun* v. *Chronicle* that "*Zhao* is incorrect in its assertion that the only activities qualifying for statutory protection are those which meet the lofty standard of pertaining to the heart of self-government." (*Braun* v. *Chronicle*, *supra*, 52 Cal.App.4th at pp. 1046-1047.)

As the *Braun* court explained: "At least as to acts covered by clauses one and two of section 425.16, subdivision (e), the statute requires simply *any* writing or statement made in, or in connection with an issue under consideration or review by, the specified proceeding or body. Thus these clauses safeguard free speech and petition conduct aimed at advancing self government, as well as conduct aimed at more mundane pursuits. Under the plain terms of the statute it is the context or setting itself that makes the issue a public issue: all that matters is that the First Amendment activity take place in an official proceeding or be made in connection with an issue being reviewed by an official proceeding. [¶] The answer to *Zhao*'s concern over how to harmonize the language of section 425.16, subdivision (e), clause

_____

[284 P.2d 1] [trial court impliedly found "every fact necessary to support its order"].) In the Court of Appeal and in their briefing before this court, plaintiffs have argued that they met their burden under the anti-SLAPP statute of demonstrating a probability that they would prevail on their claims. Reversing on other grounds, we express no opinion on that question.

two with the statement of legislative intent contained in subdivision (a) is now apparent: The Legislature when crafting the clause two definition clearly and unambiguously resorted to an easily understandable concept of what constitutes a public issue. Specifically, it *equated* a public issue with the authorized official proceeding to which it connects." (*Braun* v. *Chronicle*, *supra*, 52 Cal.App.4th at p. 1047, italics in original.)

Thus, contrary to the Court of Appeal's construction, "the statutory language is clear. [Citation.] The statute does *not* limit its application to certain types of petition activity." (*Beilenson* v. *Superior Court* (1996) 44 Cal.App.4th 944, 949 [52 Cal.Rptr.2d 357], italics added; see also *Lafayette Morehouse, Inc.* v. *Chronicle Publishing Co.* (1995) 37 Cal.App.4th 855, 863 [44 Cal.Rptr.2d 46] [anti-SLAPP law protects newspaper's statements relating to issue under consideration by county board of supervisors and federal courts]; *Church of Scientology* v. *Wollersheim* (1996) 42 Cal.App.4th 628, 647-648 [49 Cal.Rptr.2d 620] [section 425.16 applies to action to set aside prior personal injury judgment, which resulted from defendant's exercise of his First Amendment litigation rights].)

### 2. *Principles of Statutory Construction*

Second, the Court of Appeal's analysis contravenes fundamental principles of statutory construction. ■ Where different words or phrases are used in the same connection in different parts of a statute, it is presumed the Legislature intended a different meaning. (*Playboy Enterprises, Inc.* v. *Superior Court* (1984) 154 Cal.App.3d 14, 21 [201 Cal.Rptr. 207].) Clauses (3) and (4) of section 425.16, subdivision (e), concerning statements made in public fora and "other conduct" implicating speech or petition rights, include an express "issue of public interest" limitation; clauses (1) and (2), concerning statements made before or in connection with issues under review by official proceedings, contain no such limitation. In light of this variation in phraseology, it must be presumed the Legislature intended different "issue" requirements to apply to anti-SLAPP motions brought under clauses (3) and (4) of subdivision (e) than to motions brought under clauses (1) and (2). (*Playboy Enterprises, Inc.*, *supra*, at p. 21.) That the Legislature, when amending section 425.16 in 1997 to add the substance of clause (4), was at pains simultaneously to separate, by parenthetical numbering, subdivision (e)'s resulting four clauses buttresses the point by emphasizing the grammatical and analytical independence of the clauses.

If, as plaintiffs contend, the operative language in section 425.16, subdivision (b), referring to a person's exercise of First Amendment rights "in connection with a public issue," were meant to function as a separate proof

requirement applicable to motions brought under all four clauses of subdivision (e), no purpose would be served by the Legislature's specification in clauses (3) and (4) that covered issues must be "of public interest." █ " 'Courts should give meaning to every word of a statute if possible, and should avoid a construction making any word surplusage.' " (*Reno* v. *Baird* (1998) 18 Cal.4th 640, 658 [76 Cal.Rptr.2d 499, 957 P.2d 1333], quoting *Arnett* v. *Dal Cielo* (1996) 14 Cal.4th 4, 22 [56 Cal.Rptr.2d 706, 923 P.2d 1].) Accordingly, we reject plaintiffs' contention and adopt, instead, a construction that gives meaning and assigns import to the phrase "of public interest" in subdivision (e)(3) and (4) of section 425.16.

Contrary to plaintiffs' suggestion, that the Legislature, when enacting section 425.16, expressed in the statute's preamble a desire "to encourage continued participation in matters of public significance" (§ 425.16, subd. (a)) does not imply the Legislature intended to impose, in the statute's operative sections, an across-the-board "issue of public interest" pleading requirement. Construing clauses (1) and (2) of section 425.16, subdivision (e) as lacking such a requirement does not diminish their effectiveness in encouraging participation in public affairs. Any matter pending before an official proceeding possesses some measure of "public significance" owing solely to the public nature of the proceeding, and free discussion of such matters furthers effective exercise of the petition rights section 425.16 was intended to protect. The Legislature's stated intent is best served, therefore, by a construction of section 425.16 that broadly encompasses participation in official proceedings, generally, whether or not such participation remains strictly focused on "public" issues.

As the Court of Appeal in *Braun* v. *Chronicle* explained: "The term 'significance' supports multiple meanings. It can mean '[t]he meaning or import *of* something' " and "[i]t can also mean '[i]mportance, consequence.' " (*Braun* v. *Chronicle, supra,* 52 Cal.App.4th at p. 1048, quoting 15 Oxford English Dict. (2d ed. 1989) p. 458.) Thus, a matter may have "public meaning or significance within the language of section 425.16, subdivision (a) because and solely because . . . it occurs within the context of the proceedings delineated in clause one . . . or . . . in connection with an issue under consideration or review by one of the bodies or proceedings delineated in clause two." (*Braun* v. *Chronicle, supra,* at p. 1048.)

█ Of course, "legislative intent is not gleaned solely from the preamble of a statute; it is gleaned from the statute as a whole, which includes the particular directives." (*Braun* v. *Chronicle, supra,* 52 Cal.App.4th at p. 1048.) And "every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have

effect." (*Stafford* v. *Realty Bond Service Corp.* (1952) 39 Cal.2d 797, 805 [249 P.2d 241].) In light of these fundamental principles, "the meaning ascribed to the concept of 'public significance' in the preamble must accommodate the singular, clearly defined protected activities set forth in each clause of section 425.16, subdivision (e)." (*Braun* v. *Chronicle, supra,* at p. 1048.) Construing the term "significance" in the preamble to denote simply "importance" (15 Oxford English Dict., *supra,* at p. 458) harmonizes the term with a plain reading of subdivision (e)(1) and (2) that imports no additional "public issue" requirement, because such a construction accounts for the measure of public significance possessed by "*any* written or oral statement or writing" (§ 425.16, subd. (e)(1) and (2), italics added) that is made before, or in connection with, an official proceeding.

### 3.  *Legislative Intent*

▮    Third, the Court of Appeal's analysis contravenes the specific legislative intent expressly stated in section 425.16, as well as that implied by the statute's legislative history as revealed by legislative history materials in the record.

In 1997, after the Court of Appeal's decision in this case, the Legislature amended section 425.16, effecting no substantive changes to the anti-SLAPP scheme, but providing that the statute "shall be construed broadly." (§ 425.16, subd. (a), as amended by Stats. 1997, ch. 271, § 1; cf. *Bradbury* v. *Superior Court* (1996) 49 Cal.App.4th 1108, 1114, fn. 3 [57 Cal.Rptr.2d 207] [an appellate court, whenever possible, should interpret the First Amendment and section 425.16 in a manner "favorable to the exercise of freedom of speech, not its curtailment"].)[7] The proviso is not surprising, since the "stated purpose of the [anti-SLAPP] statute . . . includes protection of not only the constitutional right to 'petition for the redress of grievances,' but the broader constitutional right of freedom of speech." (*Averill* v. *Superior Court* (1996) 42 Cal.App.4th 1170, 1176 [50 Cal.Rptr.2d 62].) Our construction of section 425.16 to protect not just statements or writings on public issues, but all statements or writings made before, or in connection with issues under consideration by, official bodies and proceedings, is consistent with that purpose, as well as with the statute's plain language.

▮    Where, as here, legislative intent is expressed in unambiguous terms, we must treat the statutory language as conclusive; "no resort to extrinsic

---

[7]Although the Court of Appeal did not have the benefit of the Legislature's pronouncement that section 425.16 must "be construed broadly" (§ 425.16, subd. (a)), plaintiffs do not contend that this court's decision depends on the wording of the section before the amendment, but, rather, citing *Roberston* v. *Rodriguez* (1995) 36 Cal.App.4th 347, 356 [42 Cal.Rptr.2d 464], acknowledge that section 425.16 is a procedural statute that properly is applied prospectively to an existing cause of action.

aids is necessary or proper." (*People* v. *Otto* (1992) 2 Cal.4th 1088, 1108 [9 Cal.Rptr.2d 596, 831 P.2d 1178], citing *Griffin* v. *Oceanic Contractors, Inc.* (1982) 458 U.S. 564, 570 [102 S.Ct. 3245, 3249-3250, 73 L.Ed.2d 973]; see also *Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 804 [268 Cal.Rptr. 753, 789 P.2d 934]; *Board of Supervisors* v. *Lonergan* (1980) 27 Cal.3d 855, 866 [167 Cal.Rptr. 820, 616 P.2d 802].) ▇▇▇ Accordingly, we need not refer to extrinsic indicators of legislative intent in concluding that section 425.16 applies to plaintiffs' causes of action based on ECHO's statements in connection with actual and potential civil litigation and a HUD investigation. Nevertheless, we observe that available legislative history buttresses the conclusion.

Legislative history materials respecting the origins of section 425.16 indicate the statute was intended broadly to protect, inter alia, direct petitioning of the government and petition-related statements and writings—that is, "any written or oral statement or writing made·before a legislative, executive, or judicial proceeding" (§ 425.16, subd. (e)(1)) or "in connection with an issue under consideration or review" (*id.*, subd. (e)(2)) by such. The seminal academic research on which the original version of the statute was based used "an operational definition of SLAPP suits as implicating 'behavior protected by the Petition Clause.' " (*Zhao* v. *Wong, supra,* 48 Cal.App.4th at p. 1124, quoting Canan & Pring, *Studying Strategic Lawsuits Against Public Participation: Mixing Quantitative and Qualitative Approaches* (1988) 22 L. & Soc'y Rev. 385, 387.)

The Legislature's 1997 amendment of the statute to mandate that it be broadly construed apparently was prompted by judicial decisions, including that of the Court of Appeal in this case, that had narrowly construed it to include an overall "public issue" limitation. (See Stats. 1997, ch. 271, § 1; *Zhao* v. *Wong, supra,* 48 Cal.App.4th at p. 1128 [disagreeing "that the statute was meant to have broad application"]; *Linsco/Private Ledger, Inc.* v. *Investors Arbitration Services, Inc., supra,* 50 Cal.App.4th at p. 1638 [opining that "the statute must be given a narrow interpretation"].) The timing of the amendment alone supports the inference: That the Legislature added its broad construction proviso within a year following issuance of *Zhao, Linsco/ Private Ledger, Inc.,* and the decision below plainly indicates these decisions were mistaken in their narrow view of the relevant legislative intent.

The Assembly Judiciary Committee's analysis of the amendatory legislation confirms the amendment was intended specifically to overrule *Zhao* v. *Wong* and the Court of Appeal's decision in this case. (See Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1296 (1997-1998 Reg. Sess.) for July 2, 1997, hg., pp. 3-4 [stating "proponents have provided ample evidence

that the state's courts of appeal are issuing conflicting opinions about the breadth of Section 425.16," noting that *Averill* v. *Superior Court, supra,* 42 Cal.App.4th 1170, *Church of Scientology* v. *Wollersheim, supra,* 42 Cal.App.4th 628, and *Braun* v. *Chronicle, supra,* 52 Cal.App.4th 1036, "have construed the statute broadly," while *Zhao* v. *Wong, supra,* 48 Cal.App.4th 1114, and the Court of Appeal in this case "have construed it very narrowly," and stating Sen. Bill No. 1296 "would clarify the Legislature's intent that the provisions of Section 425.16 be construed broadly"].)

As defendant points out, inferring a separate "public issue" requirement in subdivision (e)(1) and (2) of section 425.16 would result in the anomalous result that much direct petition activity—viz., petition activity connected to litigation that trial courts determine is not focused on an inherently "public" issue—while absolutely privileged under the litigation privilege codified by Civil Code section 47, subdivision (b) and under the federal and state Constitutions, would *not* be entitled to the procedural protections of the anti-SLAPP law, even though section 425.16 expressly states the Legislature's intent thereby "broadly" to protect the right of petition (§ 425.16, subd. (a)).[8]

Thus, the timing of the Legislature's amendment, considered together with relevant legislative history and materials related to both the original statute and the amendment, amply demonstrates the Legislature's intent consistently has been to protect all direct petitioning of governmental bodies (including, as relevant here, courts and administrative agencies) and petition-related statements and writings.

### 4. *Public Policy*

We also believe that the broad construction expressly called for in subdivision (a) of section 425.16 is desirable from the standpoint of judicial

---

[8]Plaintiffs, apparently drawing upon the United States Supreme Court's decision in *Connick* v. *Myers* (1983) 461 U.S. 138 [103 S.Ct. 1684, 75 L.Ed.2d 708], argue at length that whether a statement or writing is protected under section 425.16, subdivision (e)(1) and (2) must be determined by the content, form, and context of the statement or writing, as revealed by the whole record. *Connick* was concerned primarily with protection of speech by public employees and so is not particularly apposite. Moreover, the high court in *Connick* did " 'not deem it either appropriate or feasible to attempt to lay down a general standard against which all . . . statements [by employees that are critical of their superiors] may be judged.' " (*Connick, supra,* at p. 154 [103 S.Ct. at p. 1694].) Thus, *Connick*'s suggestion that "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record" (*id.* at pp. 147-148 [103 S.Ct. at p. 1690], fn. omitted), for the purpose of resolving the issue presented in that case, cannot be taken as authority (either binding or persuasive) for construing section 425.16, our state anti-SLAPP statute.

efficiency and that our straining to construe the statute as the Court of Appeal did would serve Californians poorly. In effectively deeming statements and writings made before or connected with issues being considered by any official proceeding to have public significance per se, the Legislature afforded trial courts a reasonable, bright-line test applicable to a large class of potential section 425.16 motions. As discussed, the "Legislature when crafting the clause two definition clearly and unambiguously resorted to an easily understandable concept of what constitutes a public issue." (*Braun* v. *Chronicle, supra,* 52 Cal.App.4th at p. 1047.) For the sake of clarity, as well as under the compulsion of the legal principles earlier discussed, we shall not disturb the bright-line "official proceeding" test the Legislature has embedded in subdivision (e), clauses (1) and (2).

That the Court of Appeal in this case divided on the question whether defendant ECHO's statements about plaintiffs were in fact connected to a "public issue" illustrates that where a bright-line "official proceeding" test is not available, confusion and disagreement about what issues truly possess "public" significance inevitably will arise, thus delaying resolution of section 425.16 motions and wasting precious judicial resources.[9] The plain language construction we adopt, on the other hand, retains for California courts, advocates and disputants a relatively clear standard for resolving a large class of section 425.16 disputes quickly, at minimal expense to taxpayers and themselves.

Contrary to the suggestion of the concurring and dissenting opinion, we do not believe our construction will unduly jeopardize meritorious lawsuits. The Legislature already has weighed an appropriate concern for the viability of meritorious claims against the concern "to encourage participation in matters of public significance," as is evident in its having declared that the statute is directed against "lawsuits brought primarily to chill the valid exercise of constitutional rights" and "abuse of the judicial process" (§ 425.16, subd. (a)), and in its having provided that lawsuits based on protected statements are nevertheless *not* subject to being stricken when "the court determines that the plaintiff has established a probability that he or she will prevail on the claim" (*id.,* subd. (b)(1)).

The Legislature, moreover, has provided, and California courts have recognized, substantive and procedural limitations that protect plaintiffs

---

[9]In a related context, one commentator opines that use of a "public concern" test " 'amounts to little more than a message to judges and attorneys that no standards are necessary because they will, or should, know a public concern when they see it.' " (Post, *The Constitutional Concept of Public Discourse: Outrageous Opinion, Democratic Deliberation and Hustler Magazine v. Falwell* (1990) 103 Harv. L.Rev. 603, 669, quoting Langvardt, *Public Concern Revisited: A New Role for an Old Doctrine in the Constitutional Law of Defamation* (1987) 21 Val. U. L.Rev. 241, 259.)

against overbroad application of the anti-SLAPP mechanism. As we recognized in *Rosenthal* v. *Great Western Fin. Securities Corp., supra,* 14 Cal.4th at page 412, "This court and the Courts of Appeal, noting the potential deprivation of jury trial that might result were [section 425.16 and similar] statutes construed to require the plaintiff first to *prove* the specified claim to the trial court, have instead read the statutes as requiring the court to determine only if the plaintiff has stated and substantiated a legally sufficient claim. [Citations.]" (Italics in original; see also *College Hospital, Inc.* v. *Superior Court, supra,* 8 Cal.4th at pp. 718-719 [section 425.16 and similar motions operate "like a demurrer or motion for summary judgment in 'reverse' "].)

We have no reason to suppose the Legislature failed to consider the need for reasonable limitations on the use of special motions to strike. As discussed, the Legislature apparently judged the bright-line "official proceeding" test set out in clauses (1) and (2) of section 425.16, subdivision (e) to be adequate, and thought it unnecessary to add an "issue of public interest" limitation for those two classes of potential cases. For potential cases where an analog to the "official proceeding" bright-line test does not readily appear—viz., "public forum" (§ 425.16, subd. (e)(3)) and "other conduct" (§ 425.16, subd. (e)(4)) cases—the Legislature *did* include an "issue of public interest" limitation. We find no grounds for reweighing these concerns in an effort to second-guess the Legislature's considered policy judgment. If we today mistake the Legislature's intention, the Legislature may easily amend the statute.

### Conclusion

For the foregoing reasons, we conclude the Court of Appeal erred in construing section 425.16 as if, contrary to the statute's plain language, clauses (1) and (2) of subdivision (e) contained an "issue of public interest" limitation. Under section 425.16, a defendant moving to strike a cause of action arising from a statement made before, or in connection with an issue under consideration by, a legally authorized official proceeding need *not* separately demonstrate that the statement concerned an issue of public significance.[10] Accordingly, we have neither need nor occasion to consider whether ECHO's statements on which plaintiffs base their causes of action in fact concerned such issues.

---

[10] Insofar as they hold to the contrary, *Zhao* v. *Wong, supra,* 48 Cal.App.4th 1114, *Linsco/Private Ledger, Inc.* v. *Investors Arbitration Services, Inc., supra,* 50 Cal.App.4th 1633, *Ericsson GE Mobile Communications, Inc.* v. *C.S.I. Telecommunications Engineers, supra,* 49 Cal.App.4th 1591, and *Mission Oaks Ranch, Ltd.* v. *County of Santa Barbara, supra,* 65 Cal.App.4th 713, are disapproved.

*Disposition*

The judgment of the Court of Appeal is reversed and the cause remanded for further proceedings consistent with this opinion.

George, C. J., Mosk, J., Kennard, J., and Chin, J., concurred.

**BAXTER, J., Concurring and Dissenting.**—I concur in the majority's determination to reverse the judgment of the Court ·of Appeal below. Eden Council for Hope and Opportunity (ECHO), a nonprofit, publicly funded fair housing counseling organization, was plainly acting in furtherance of its right of petition or free speech *in connection with a public issue or issue of public interest* when it assisted tenants in pursuing legal claims against their landlords, and is thus entitled to seek anti-SLAPP (strategic lawsuit against public participation) protection from a landlord's retaliatory lawsuit aimed at punishing the nonprofit organization for assisting tenants in understanding and defending their legal rights.

I dissent from the majority's conclusion that a defendant moving specially under subdivision (e)(1) or (2) of Code of Civil Procedure section 425.16 (hereafter section 425.16 or the anti-SLAPP legislation) to strike a cause of action arising from a statement made before, or in connection with an issue under consideration by a legislative, executive, or judicial body, or any other official proceeding authorized by law, need never further demonstrate that such proceeding involved a public issue or issue of public interest. The anti-SLAPP legislation is a powerful tool to be broadly construed to promote ". . . the open expression of ideas, opinions and the disclosure of information." (*Beilenson* v. *Superior Court* (1996) 44 Cal.App.4th 944, 956 [52 Cal.Rptr.2d 357].) It is not, however, generally available to the parties to any civil action, but is instead expressly limited to those lawsuits " 'brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances' 'in connection with a public issue.' (§ 425.16, subds. (a), (b).)" (*Wilcox* v. *Superior Court* (1994) 27 Cal.App.4th 809, 819 [33 Cal.Rptr.2d 446] (*Wilcox*).) The majority's holding in this case belies that carefully delineated legislative purpose and will authorize use of the extraordinary anti-SLAPP remedy in a great number of cases to which it was never intended to apply.

I

The Legislature has expressly set forth the intent and purpose behind the anti-SLAPP legislation in subdivision (a) of section 425.16: "The Legislature finds and declares that there has been a disturbing increase in lawsuits

brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly."

Accordingly, under the anti-SLAPP statutory scheme, "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike . . . ." (§ 425.16, subd. (b)(1).)

The legislative intent behind the anti-SLAPP legislation could not be clearer. The Legislature enacted the remedial legislation to curtail the "disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances" because such lawsuits discourage persons from "participation in matters of public significance" and thereby constitute an "abuse of the judicial process." (§ 425.16, subd. (a).)

The anti-SLAPP legislation was enacted in response to a growing number of meritless lawsuits, usually alleging tort liability, brought against persons for exercising their constitutional rights of petition and freedom of speech. (Sen. Bill No. 1264 (1991-1992 Reg. Sess.) enacted as Stats. 1992, ch. 726, § 2, pp. 3523-3524.) The term "SLAPP suit," the acronym for "strategic lawsuit against public participation," was coined by two University of Denver professors, George W. Pring and Penelope Canan, who authored the seminal influential studies on this phenomenon.

In *Hull* v. *Rossi* (1993) 13 Cal.App.4th 1763, 1769 [17 Cal.Rptr.2d 457], the court defined a SLAPP suit, plain and simple, as "one brought to intimidate and for purely political purposes."

In *Wilcox, supra,* 27 Cal.App.4th 809, the court characterized the precise nature of SLAPP suits in the following terms: "The paradigm SLAPP is a suit filed by a large land developer against environmental activists or a neighborhood association intended to chill the defendants' continued political or legal opposition to the developers' plans. [Citations.] . . . [¶] The favored causes of action in SLAPP suits are defamation, various business torts such as interference with prospective economic advantage, nuisance and intentional infliction of emotional distress. (Barker, *Common-Law and Statutory Solutions to the Problem of SLAPPs* (1993) 26 Loyola L.A. L.Rev.

395, 402-403.) Plaintiffs in these actions typically ask for damages which would be ruinous to the defendants. (See, e.g., *Protect Our Mountain* v. *District Court* [(Colo. 1984)] 677 P.2d [1361,] 1364 [developer sought $10 million compensatory and $30 million punitive damages]; Barker, *supra*, 26 Loyola L.A. L.Rev. at p. 403 [estimating damage claims in SLAPP's average $9.1 million].)

"SLAPP suits are brought to obtain an *economic* advantage over the defendant, not to vindicate a legally cognizable right of the plaintiff. [Citations.] Indeed, one of the common characteristics of a SLAPP suit is its lack of merit. [Citation.] But lack of merit is not of concern to the plaintiff because the plaintiff does not expect to succeed in the lawsuit, only to tie up the defendant's resources for a sufficient length of time to accomplish plaintiff's underlying objective. [Citation.] As long as the defendant is forced to devote its time, energy and financial resources to combating the lawsuit its ability to combat the plaintiff in the political arena is substantially diminished. [Citations.] The SLAPP strategy also works even if the matter is already in litigation because the defendant/cross-complainant hopes to drive up the cost of litigation to the point where the plaintiff/cross-defendant will abandon its case or have less resources available to prosecute its action against the defendant/cross-complainant and to deter future litigation. [Citation.]" (*Wilcox, supra,* 27 Cal.App.4th at pp. 815-816, italics in original.)

To summarize, "while SLAPP suits 'masquerade as ordinary lawsuits' the conceptual features which reveal them as SLAPP's are that they are generally meritless suits brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so. (Pring, *SLAPPs: Strategic Lawsuits Against Public Participation* (1989) 7 Pace Envtl. L.Rev. 3, 5-6, 9.) [Fn. omitted.] Because winning is not a SLAPP plaintiff's primary motivation, defendants' traditional safeguards against meritless actions, (suits for malicious prosecution and abuse of process, requests for sanctions) are inadequate to counter SLAPP's. Instead, the SLAPPer considers any damage or sanction award which the SLAPPee might eventually recover as merely a cost of doing business. (Barker, *Common-Law and Statutory Solutions to the Problem of SLAPPs, supra,* 26 Loyola L.A. L.Rev. at pp. 406-407.) By the time a SLAPP victim can win a 'SLAPP-back' suit years later the SLAPP plaintiff will already have accomplished its underlying objective. Furthermore, retaliation against the SLAPPer may be counter-productive because it ties up the SLAPPee's resources even longer than defending the SLAPP suit itself. (*Id.* at p. 432; Comment, *Strategic Lawsuits Against Public Participtaion: An Analysis of the Solutions* [(1991)] 27 Cal. W. L.Rev. [399,] 403.)" (*Wilcox, supra,* 27 Cal.App.4th at pp. 816-817.)

In response to the growing incidence of SLAPP suits, legislatures and courts nationwide have sought to fashion procedural remedies to allow for prompt exposure and dismissal of such abusive lawsuits. California's legislative response to the growing problem was the enactment, in 1992, of the anti-SLAPP legislation embodied in section 425.16. The opening paragraph of California's anti-SLAPP statutory scheme leaves no doubt that the specific intent and purpose behind the remedial legislation was to combat the pernicious problem of SLAPP suits described above, a category of litigation the Legislature deemed an "abuse of the judicial process." (425.16, subd. (a).)[1]

Given the purpose and intent behind the anti-SLAPP legislation, I conclude the Legislature could not possibly have intended that *any* litigation arising from *any* written or oral statement made during, or in connection with, *any* legislative, executive, judicial, or other "official" proceeding should automatically qualify as a SLAPP suit within the meaning of section 425.16.

None of the foregoing well-recognized attributes of SLAPP suits—i.e., meritless suits brought primarily to obtain an *economic* advantage over defendants by tying up their resources, driving up their costs of litigation, and ultimately deterring the defendants from exercising their political or legal rights, or punishing them for doing so—are acknowledged by the majority as having any significance in resolving the issue of statutory construction posed in this case. Instead, the majority suggest that "[*a*]*ny matter pending before an official proceeding* possesses some measure of 'public significance' owing solely to the public nature of the proceeding, and free discussion of such matters furthers effective exercise of the petition rights section 425.16 was intended to protect. The Legislature's stated intent is best served, therefore, by a construction of section 425.16 that broadly

---

[1]As the court in *Zhao* v. *Wong* (1996) 48 Cal.App.4th 1114 [55 Cal.Rptr.2d 909] explained: "The legislative history provides further clarity to the statement of legislative purpose. [Fn. omitted.] Without exception, the documents in the chaptered bill file all refer to 'the empirical research of the two University of Denver professors,' in effect incorporating the scholarship of Canan and Pring into the legislative history. [Fn. omitted.] In addition, the report prepared by the Senate Committee on the Judiciary describes five examples of SLAPP suits . . . . [¶] The Legislature's concerns, as revealed by the legislative history, invariably involved activities violating the right of petition. The research of Canan and Pring is in fact based on an operational definition of SLAPP suits as implicating 'behavior protected by the Petition Clause.' [Fn. omitted.] Pring describes SLAPP suits as 'counter-attack[s] against petition-clause-protected activity. [Fn. omitted.] Three of the five examples of SLAPP suits cited by the Senate Committee on the Judiciary involved expressive activity protected by both the right of petition and the right of freedom of speech. The other two examples cited by the Senate Committee on the Judiciary involve retaliation against lawsuits, i.e., judicial petitions. [Citation.]" (48 Cal.App.4th at pp. 1123-1124.)

encompasses participation in official proceedings, generally, whether or not such participation remains strictly focused on 'public' issues." (Maj. opn., *ante*, at p. 1118, italics added.)

I fail to see how the majority's broad and expansive construction of the statute will effectuate the carefully circumscribed purpose and intent behind the anti-SLAPP legislation explicitly set forth in section 425.16, subdivision (a).

Our task in this case is to construe the provisions of subdivision (e)(1) and (2) of section 425.16 in a manner that best comports with the carefully delineated purpose and intent behind the remedial legislation expressed in subdivision (a). Subdivision (e) provides in its entirety: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: *(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law*; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (Italics added.)

The majority conclude that under section 425.16, subdivision (e)(1) and (2) there is no separate requirement that the subject inquiry of the legislative, executive, judicial or other "official" proceeding be shown to involve a public issue or issue of public interest. I do not dispute that the language of all four clauses of subdivision (e), taken as a whole, is susceptible of such a literal interpretation. However, such a construction of subdivision (e)(1) and (2) literally reads right out of the statutory scheme the very heart and purpose of this remedial legislation—legislation expressly designed to discourage the filing of a specifically defined category of lawsuits deemed by the Legislature to constitute an "abuse of the judicial process" because they, by statutory definition expressly set forth in subdivision (a), are "brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances."

It would be an exercise in futility to attempt to quantify all possible examples of lawsuits based on actionable oral statements or writings which, under the majority's construction of section 425.16, subdivision (e)(1) and

(2), will automatically qualify as retaliatory SLAPP suits as a matter of law. *Any* litigation arising from *any* word uttered in a court of law, in a legislative or executive proceeding, or in any "official" proceeding in California, will henceforth, under the majority's rationale, automatically constitute a retaliatory SLAPP suit. *Any* writing made in connection with *any* such proceeding (for example, every pleading or piece of paper prepared in connection with any legal proceeding transpiring in this state), if actionable on some legal basis and sued upon, will likewise, under the majority's rationale, constitute a retaliatory SLAPP suit as a matter of law. It is highly unlikely the Legislature intended or envisioned that such an enormity of legal actions would automatically qualify as retaliatory SLAPP suits under subdivision (e)(1) and (2) when it enacted legislation specifically designed to curb the abusive practice.

The majority's overly broad construction of section 425.16 subdivision (e)(1) and (2) will also likely have a significant impact on pretrial civil litigation in California. The special motion to strike a SLAPP suit is a drastic and extraordinary remedy. It not only allows an early summary dismissal of the plaintiff's complaint, it also cuts off all discovery upon its filing and authorizes an award of attorney fees to the prevailing defendant. (§ 425.16, subds. (b), (c), (g).) The majority's holding expands the definition of a SLAPP suit to include a potentially huge number of cases, thereby making the special motion to strike available in an untold number of legal actions that will bear no resemblance to the paradigm retaliatory SLAPP suit to which the remedial legislation was specifically addressed.

The decision of the Court of Appeal below (including both the majority and dissenting opinions), an earlier published opinion of the same division of that court (*Zhao* v. *Wong, supra,* 48 Cal.App.4th 1114), and the published decisions of several other Courts of Appeal (see, e.g., *Linsco/Private Ledger, Inc.* v. *Investors Arbitration Services, Inc.* (1996) 50 Cal.App.4th 1633 [58 Cal.Rptr.2d 613]; *Ericsson GE Mobile Communications, Inc.* v. *C.S.I. Telecommunications Engineers* (1996) 49 Cal.App.4th 1591 [57 Cal.Rptr.2d 491]), have all strived to interpret the overbroad and ambiguous language of section 425.16, subdivisions (b)(1) and (e)(1) and (2), in a manner that preserves the original intent, purpose, and mandate of the anti-SLAPP legislation. In my view those courts have reasonably interpreted subdivision (e)(1) and (2) as requiring that the subject-matter inquiry of the legislative, executive, judicial, or other "offical" proceeding be shown to involve a public issue or issue of public interest so as to preserve and effectuate the overriding mandate of subdivision (a). The broad construction given subdivision (e)(1) and (2) by the majority, in contrast, effectively abrogates that carefully drafted statement of legislative purpose and intent.

In interpreting subdivisions (b)(1) and (e)(1) and (2) of section 425.16 in a manner at odds with the Legislature's carefully circumscribed definition of SLAPP suits set forth in subdivision (a), the majority invoke a " 'longstanding rule of statutory construction—the "last antecedent rule"—[which] provides that "qualifying words and phrases and clauses are to be applied to the words or phrases immediately preceding and are not to be construed as extending to or including others more remote." ' (*White* v. *County of Sacramento* (1982) 31 Cal.3d 676, 680 [183 Cal.Rptr. 520, 646 P.2d 191], quoting *Board of Port Commrs.* v. *Williams* (1937) 9 Cal.2d 381, 389 [70 P.2d 918].)" (Maj. opn., *ante*, at p. 1114.) Rules of statutory construction such as the "last antecedent rule" can oftentimes prove useful in gleaning legislative intent behind complex statutes, but they are not immutable. To my mind, " '[m]ore in point here . . . . is the principle that such rules shall always " 'be subordinated to the primary rule that the intent shall prevail over the letter.' " ' (*Estate of Banerjee* (1978) 21 Cal.3d 527, 539 [147 Cal.Rptr. 157, 580 P.2d 657]; accord, *In re Joseph B.* (1983) 34 Cal.3d 952, 957 [196 Cal.Rptr. 348, 671 P.2d 852]; *Wildlife Alive* v. *Chickering* (1976) 18 Cal.3d 190, 195 [132 Cal.Rptr. 377, 553 P.2d 537].)" (*California Fed. Savings & Loan Assn.* v. *City of Los Angeles* (1995) 11 Cal.4th 342, 351 [45 Cal.Rptr.2d 279, 902 P.2d 297].)

The heart of this anti-SLAPP legislation is embodied in subdivision (a) of section 425.16. This is a case in which a practical reading of the clearly stated purpose and intent behind this remedial legislation found in subdivisions (a) and (b) should take precedence over a literal reading of the broadly worded subdivision (e)(1) and (2), since the latter, expansively interpreted, is in patent conflict with the former. Unlike the majority, I conclude the Legislature's primary intent is that this remedial statutory scheme be governed by the restricted scope of the statement of legislative purpose found in subdivision (a). As suggested by the court in *Zhao* v. *Wong, supra,* 48 Cal.App.4th at page 1129, "The very fact that the Legislature included a precisely drafted statement of legislative purpose in the statute manifests an intent that the application of the statute be governed by this statement of purpose."

The statutory construction invoked by the majority does, in a literal sense, appear to harmonize clauses (1) and (2) with clauses (3) and (4) of section 425.16, subdivision (e), since the latter two clauses expressly require a separate showing of involvement of a public issue or issue of public interest where the constitutionally protected written or oral statement was made "in a place open to the public" (subd. (e)(3)) or any other place (subd. (e)(4)). But that same analysis virtually nullifies the precisely drafted statement of legislative intent contained in subdivision (a) when the availability of the

special motion is being assessed under subdivision (e)(1) or (2), a matter I believe should be of far greater concern to this court in our effort to reasonably construe and effectuate the Legislature's intent and purpose behind the legislation. "[A] court is to construe a statute ' "so as to effectuate the purpose of the law." ' " (*White* v. *County of Sacramento* (1982) 31 Cal.3d 676, 681 [183 Cal.Rptr. 520, 646 P.2d 191].) The purpose of the anti-SLAPP legislation is to make available a drastic pretrial remedy designed to discourage the filing of a specifically defined category of lawsuits deemed by the Legislature to constitute an "abuse of the judicial process" because they are "brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a).) The legislation was *not* intended to make such an extraordinary remedy broadly available in every case involving an actionable statement uttered in a court of law, or in a legislative, executive, or other "offical" proceeding.

All three justices comprising the panel that decided petitioner's appeal below, majority and dissenting alike, agreed that the anti-SLAPP statute was not intended to immunize every statement made before or in connection with an official proceeding, but was instead intended to protect statements on a *public issue* made in an official proceeding and statements made in connection with a *public issue* under consideration or review in an official proceeding. (See also *Linsco/Private Ledger, Inc.* v. *Investors Arbitration Services, Inc., supra,* 50 Cal.App.4th at p. 1633; *Zhao* v. *Wong, supra,* 48 Cal.App.4th at p. 1127.) I would commend what I believe are the key portions of those two separate opinions, which together conclude, contrary to the holding of the majority here, that subdivision (e)(1) and (2) of section 425.16 must be construed to require a separate showing that the legislative, executive, judicial or other "official" proceeding involved inquiry into a public issue or issue of public interest. The section that follows sets forth the relevant portions of the opinions of the Court of Appeal holding to that effect.

## II

In the Court of Appeal below in this case (maj. opn. by Dossee, J.; Stein, J., conc.; dis. opn. by Strankman, P. J.), the majority made the following observations in concluding that a defendant seeking anti-SLAPP protection under section 425.16, subdivision (e)(1) or (2), must separately demonstrate that such statement was made in a legislative, executive, judicial or other "official" proceeding involving a public issue or issue of public interest:

"The remedy authorized by the anti-SLAPP statute is a special motion to strike any cause of action which arises from an 'act of [the defendant] in

furtherance of the [defendant's] right of petition or free speech under the United States or California Constitution in connection with a public issue . . . .' (§ 425.16, subd. (b); see generally, *Wilcox* v. *Superior Court* (1994) 27 Cal.App.4th 809 [33 Cal.Rptr.2d 446].)

"The special motion to strike a SLAPP suit is a drastic and extraordinary remedy. It not only allows an early dismissal of the plaintiff's complaint; it also authorizes an award of attorney fees to the prevailing defendant. (§ 425.16, subds. (b), (c).). . . .

". . . . . . . . . . . . . . . . . . . . . . . . . .

"Subdivision (e) of section 425.16 [as in effect and controlling in the instant case] defines an ' "act in furtherance of a person's right of petition or free speech . . . in connection with a public issue" ' to include '[1] any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; [2] any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; or [3] any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest.'

"In the present case, respondent ECHO contends that plaintiffs' lawsuit qualifies as a SLAPP suit because it is based upon petitioning activities which fall within phrases [1] and [2] of section 425.16, subdivision (e).[2] ECHO asserts that statements made in assisting tenants Ford and Bond to complain to HUD and to file small claims court actions, including ECHO's efforts to resist plaintiffs' subpoenas, qualify as statements within an official proceeding under phrase [1]. Further, ECHO asserts that statements made in response to plaintiffs' efforts to challenge ECHO's public funding were connected to the issues under consideration by HUD or the courts and therefore fall within phrase [2].

"On two previous occasions, this division has been called upon to examine the scope of the anti-SLAPP statute, and on both occasions we gave the statute a narrow interpretation. First, in *Zhao* v. *Wong*[, *supra*,] 48 Cal.App.4th [at pp.] 1120-1121, 1129. . . , we concluded that in light of the legislative history and the declared legislative purpose of the anti-SLAPP statute, the statute applies only to lawsuits which are based upon activities closely tied

---

"[2]ECHO does not rely upon phrase [3], which is expressly limited to the use of a public forum in connection with an issue of public interest.

to the right to petition and the freedom of speech.[3] We emphasized that the challenged petition or speech must have been 'in connection with a public issue.' (*Zhao, supra,* 48 Cal.App.4th at p. 1127.) Specifically, we held in *Zhao* that within phrase [2] of section 425.16, subdivision (e), the 'issue under consideration or review by a legislative, executive, or judicial body' must be a public issue. (48 Cal.App.4th at p. 1127.) More recently, in *Linsco/Private Ledger, Inc.* v. *Investors Arbitration Services, Inc.* [, *supra,*] 50 Cal.App.4th [at pp.] 1638-1639. . . , we followed the reasoning of *Zhao* to hold that within phrase [1] the statements made before an official proceeding must be on a public issue. In sum, we have concluded that the anti-SLAPP statute was not intended to immunize every statement made before or in connection with an official proceeding, but was instead intended to protect statements on a *public issue* made in an official proceeding and statements made in connection with a *public issue* under consideration or review in an official proceeding. (*Linsco/Private Ledger, Inc.* v. *Investors Arbitration Services, Inc., supra,* 50 Cal.App.4th at p. 1639; *Zhao* v. *Wong, supra,* 48 Cal.App.4th at p. 1127.)

"Recently, Division Four of this district has disagreed with our interpretation of the anti-SLAPP statute. (*Braun* v. *Chronicle Publishing Co.* (1997) 52 Cal.App.4th 1036, 1045-1048 [61 Cal.Rptr.2d 58]; see also *Church of Scientology* v. *Wollersheim* (1996) 42 Cal.App.4th 628, 650 [49 Cal.Rptr.2d 620].) The *Braun* court reasoned that the Legislature *equated* a public issue with the authorized official proceeding to which it connects. Hence, it is the setting itself—an official proceeding—that makes the issue a public issue: 'all that matters is that the First Amendment activity take place in an official proceeding or be made in connection with an issue being reviewed by an official proceeding.' (*Braun, supra,* at p. 1047.)

"We cannot accept this construction of the anti-SLAPP statute. Certainly not every issue before the courts and other official bodies is a public issue, and we find it doubtful that the Legislature thought otherwise. (*Linsco/ Private Ledger, Inc.* v. *Investors Arbitration Services, Inc., supra,* 50 Cal.App.4th at p. 1639; see *Zhao* v. *Wong, supra,* 48 Cal.App.4th at p. 1131.) Furthermore, such a broad reading of the anti-SLAPP statute would have legal consequences beyond the statute's declared purpose, as the anti-SLAPP statute would supplant the statutory privilege for statements made in official proceedings (Civ. Code, § 47, subd. (b)). (*Linsco/Private Ledger, Inc.* v.

---

"[3]Subdivision (a) of section 425.16 provides: 'The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process.'

*Investors Arbitration Services, Inc., supra,* 50 Cal.App.4th at p. 1639; see *Zhao* v. *Wong, supra,* 48 Cal.App.4th at pp. 1129-1130.) We remain committed to our earlier position that a lawsuit qualifies as a SLAPP suit only if it challenges a statement on a *public* issue made in an official proceeding or a statement made in connection with a *public* issue under review in an official proceeding. (*Linsco/Private Ledger, Inc.* v. *Investors Arbitration Services, Inc., supra,* 50 Cal.App.4th at p. 1639; *Zhao* v. *Wong, supra,* 48 Cal.App.4th at p. 1127.)"

Although Presiding Justice Strankman dissented below, he disagreed only with the majority's conclusion that the proceedings at which statements were made that were attributed to ECHO's employees and allegedly slandered plaintiff Briggs did not involve a public issue. Presiding Justice Strankman joined in the majority's threshold conclusion that a public issue showing is separately required under subdivision (e)(1) or (2) of section 425.16 in order for the special anti-SLAPP remedy to apply. The portion of his dissenting opinion relevant here read as follows:

"I agree with the majority that a defendant qualifies for anti-SLAPP protection only if the challenged suit arose from the defendant's petitioning or speech 'in connection with a public issue.' . . . [¶] . . . [¶] The Legislature expressly declared that its intent in enacting the anti-SLAPP statute was 'to encourage continued participation in matters of public significance' and thus granted a person protection from lawsuits arising from 'any act of that person in furtherance of the person's right of petition or free speech . . . in connection with a public issue.' (Code Civ. Proc., § 425.16, subds. (a), (b).) If the statute said no more, there would be no question that a defendant lodging an anti-SLAPP motion must make a prima facie showing that plaintiff's suit arises from an act in furtherance of defendant's right of petition or free speech *in connection with a public issue.* But the statute further provides that an ' "act in furtherance of a person's right of petition or free speech . . . in connection with a public issue" ' includes '[1] any . . . statement . . . made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; [2] any . . . statement . . . made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; or [3] any . . . statement . . . made in a place open to the public or a public forum in connection with an issue of public interest.' (Code Civ. Proc., § 425.16, subd. (e).)

"The public issue, or public interest, element is expressly included in only the third definitional category of the anti-SLAPP statute, which has led some courts to conclude that the statute protects any statement made before or in

connection with an official proceeding even if the statement does not concern a public issue. (E.g., *Church of Scientology* v. *Wollersheim* (1996) 42 Cal.App.4th 628, 650 [49 Cal.Rptr.2d 620].) We have rejected this interpretation of the anti-SLAPP statute as contrary to the express declaration of legislative intent and general statutory provision protecting a person's exercise of constitutional rights of petition and free speech *in connection with a public issue.* (Code Civ. Proc., § 425.16, subds. (a), (b); *Linsco/Private Ledger, Inc.* v. *Investors Arbitration Services, Inc.*[, *supra*,] 50 Cal.App.4th 1633, 1639 . . . ; *Zhao* v. *Wong*[, *supra*,] 48 Cal.App.4th 1114, 1127. . . .) I agree with the majority that 'the anti-SLAPP statute was not intended to immunize every statement made before or in connection with an official proceeding, but was instead intended to protect statements on a *public issue* made in an official proceeding and statements made in connection with a *public issue* under consideration or review in an official proceeding. (*Linsco/Private Ledger, Inc.* v. *Investors Arbitration Services, Inc., supra,* 50 Cal.App.4th at p. 1639; *Zhao* v. *Wong, supra,* 48 Cal.App.4th at p. 1127.)' [Citation.]"

### III

The majority emphasize that in 1997 the Legislature amended section 425.16, to provide that the statute "shall be broadly construed." (§ 425.16, subd. (a), as amended by Stats. 1997, ch. 271, § 1.) The majority concede the 1997 amendment "effect[ed] no substantive changes to the anti-SLAPP scheme . . . ." (Maj. opn., *ante*, at p. 1119.) I remain unconvinced the legislative intent behind the statute, as originally enacted *or as amended in 1997*, was to expand the categories of litigation qualifying as SLAPP suits in as broad and open-ended a manner as does the majority's rationale and holding in this case.

The 1997 amendment added a single sentence (italicized below) to the end of subdivision (a) of section 425.16, which currently reads: "The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. *To this end, this section shall be construed broadly.*" (Italics added.)

Obviously, the opening phrase of the single sentence added by the 1997 amendment—"To this end . . ."—reflects the Legislature's intent that the remedial provisions of the anti-SLAPP legislation be "broadly construed"

*within the context of the restricted scope of the statement of legislative purpose contained in subdivision (a).* (See also *Zhao v. Wong, supra,* 48 Cal.App.4th at p. 1129.) If the Legislature had instead desired to overrule those decisions of the Courts of Appeal that have construed section 425.16, subdivision (e)(1) and (2), as requiring demonstration of involvement of a public issue, it could have easily done so in precise and explicit terms. To my mind, the majority's analysis and holding serve neither the letter nor spirit of the 1997 amendment. Not only does the rule set down in this case fail to "construe[] broadly" the statute's remedial provisions consistent with the ends described in the carefully drawn statement of legislative purpose found in section 425.16, subdivision (a), it literally reads that statement of legislative purpose right out of the statutory scheme by recognizing sweeping new categories of litigation, bearing no resemblance to the abusive litigation practices described in that subdivision, that will henceforth automatically qualify as SLAPP suits under subdivision (e)(1) and (2).

Finally, the majority's expansive reading of section 425.16, subdivision (e)(1) and (2), may have legal consequences well beyond the statute's declared purpose, as the anti-SLAPP legislation thusly interpreted stands to supplant Civil Code section 47, subdivision (b)'s absolute litigation privilege for communications made in any legislative, judicial, or other official proceeding authorized by law. (See *Linsco/Private Ledger, Inc. v. Investors Arbitration Services, Inc., supra,* 50 Cal.App.4th at p. 1639; *Zhao v. Wong, supra,* 48 Cal.App.4th at pp. 1129-1130.) From a practical standpoint, why, under the majority's rationale, would a defendant move, *at his own expense,* to dismiss an unmeritorious lawsuit based on Civil Code section 47, subdivision (b)'s otherwise applicable litigation privilege for statements made in official proceedings, when, under the majority's expansive interpretation of the anti-SLAPP legislation, he could instead move to specially strike the suit as a retaliatory SLAPP suit and thereby immediately cut off discovery in the litigation and recover his attorney fees if dismissal is ultimately ordered?

The majority suggest it would be "anomalous" for "direct petition activity" that is "not focused on an inherently 'public' issue" to be absolutely privileged under the litigation privilege of Civil Code section 47, subdivision (b), and yet not be otherwise "entitled to the procedural protections of the anti-SLAPP law." (Maj. opn., *ante,* at p. 1121.) Under the majority's rationale, the scope of the anti-SLAPP legislation is seemingly coextensive with, if not broader than, the litigation privilege embodied in Civil Code section 47, subdivision (b). Could that have been the intent of the Legislature in enacting remedial legislation specifically designed and intended to target the abusive practice of SLAPP suits?

The majority suggest in conclusion that, "If we today mistake the Legislature's intention, the Legislature may easily amend the statute." (Maj. opn.,

*ante,* at p. 1123.) Of course the converse is true as well—were we to construe section 425.16, subdivision (e)(1) and (2), as requiring demonstration of the involvement of a public issue in the legislative, executive, judicial or "official" proceedings covered under those clauses of subdivision (e), then if the Legislature disagreed with that construction, it could amend those clauses to more clearly and explicitly convey that no such separate showing is required. I would rather this court risk reversal by the Legislature in construing the provisions of subdivision (e)(1) and (2) *consistently* with the concisely drafted statement of statutory purpose found in subdivision (a), than to interpret those two clauses so broadly as to virtually nullify the very purpose and spirit of the anti-SLAPP legislation by holding that *every* lawsuit based on *any* actionable word uttered or written in connection with *any* legislative, executive, judicial, or other "official" proceeding in the state of California will henceforth, as a matter of law, be deemed a retaliatory SLAPP suit.

I would hold, consistent with the unanimous determination of the Court of Appeal below, that the Legislature intended involvement of a public issue or issue of public interest be demonstrated under subdivision (e)(1) and (2) of section 425.16.

Brown, J., concurred.